```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

SYNCHROPILE, INC.                    *       CIVIL ACTION
                                     *
VERSUS                               *       NO. 10-1896
                                     *
TRAYLOR BROS INC., ET. AL.           *       SECTION "B"(3)
```

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Rec Doc. No. 15) seeking dismissal of Plaintiff's complaint and Plaintiffs' Cross-Motion for Partial Summary Judgment (Rec. Doc. No. 20). Accordingly, and for the reasons pronounced below,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 15) be and is hereby **GRANTED**, and

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Partial Summary Judgment (Rec. Doc. No. 20) be and is hereby **DENIED**.[1]

### I. *Cause of Action and Facts of Case*

This civil action for breach of contract arises from the contract for the widening of the Huey P. Long Bridge ("Construction Contract") between the Louisiana Department of Transportation and Development ("State") and defendants in the instant action, TKM executed on April 24, 2008.[2]

---

[1] We are grateful for the work on this case by Eric C. Cusimano, a Loyola University Law School extern with our chambers.
[2] The Construction Contract is entitled "Contract state project numbers 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, 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, 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, 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, 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, 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, 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 Huey P. Long Bridge widening".

1

In late 2007 and early 2008 Philip King ("King"), President of SynchroPile, Inc. ("SynchroPile") and Synchro Patents, Inc. held open discussions with representatives of the State and representatives of the State's structural design engineering firm Modjeski & Masters Inc.  These discussions concerned problems with the construction of concrete piers associated with the St. Francisville Bridge over the Mississippi River, in the interest of avoiding similar problems on the proposed Huey P. Long Bridge Widening Project. (Rec. Doc. No. 19-1, Exhibit A);  (Rec. Doc. No. 19-1).[3,4]  According to King's affidavit, representatives of the State, in order to eliminate confusion "desired to clearly state . . . the required method for construction of the post-grouted, drilled shafts to be constructed on the Huey P. Long Bridge Widening Project."  (Rec. Doc. No. 19-1, Exhibit A).  Following further discussions with Modjeski & Masters on behalf of the State, it was agreed that the Huey P. Long Widening Project would require the use of the post-grouting technique owned by Synchro Patents, Inc. The contract also requires the contractor awarded the project enter a license agreement with SynchroPile, the exclusively licensed user of the post-grouting technique owned by Synchro Patents, Inc.  (Rec. Doc. No. 19-1, Exhibit A).  Subsequently, State included in its "Special Provisions" of the contract for the

---

[3]The Huey P. Long Bridge Widening Project Concerns State Project Numbers: 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, 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, 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, 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, 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, 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, and 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.
[4]Exhibit A is the affidavit of Philip King, and it is manually attached to Rec. Doc. No. 19-1.  Respondent identifies this document as Exhibit A.

Huey P. Long Widening Project the following stipulation under Item No. S-118, Post Grouting Drilled Shaft (9 FT. DIAMETER):

> Contractor shall have any necessary licenses or agreements with patent holders for the post grouting technique that he proposes to use.  This item shall govern for the pressure grouting of the drilled shaft bottom as shown and described in United States Patent No. US 6,371,698 or as directed by the Engineer.  The contractor will contact and enter into a license agreement with SynchroPile, Inc, (P.O. Box 13238, San Antonio, TX 78213; Phone No. 210-355-6546; phil.king@synchropile.com).

(Rec. Doc. No. 19-1, Exhibit A); (Rec. Doc. No 15-4, Exhibit C at D-165).[5]

On March 14, 2008, King, received an email from Luis Paiz ("Paiz"), an engineer for Traylor Bros., Kiewit Southern. Co., and Massman Construction Co., as a joint venture ("TKM"), enquiring about the licensing agreement referred to in the above noted "Special Provisions." (Rec. Doc. No. 19-1, Exhibit 2).[6,7]  King responded on March 18, 2008 explaining the licensing agreement and specifying the royalty due. (Rec. Doc. No. 19-1, Exhibit 3).[8]

On April 5, 2008, after learning that TKM had successfully bid on the Construction Contract, King emailed Paiz requesting the

---

[5]Exhibit C, the Affidavit of Luis Paiz, was manually attached to Rec. Doc. No. 15-3 and has been identified by petitioner, TKM, as Exhibit C.  The notice of Manual Attachment is found at Rec. Doc. No. 15-4.
[6]Rec Doc. No. 19-1; Exhibit 2, is attached to the affidavit of Philip King, Rec. Doc. No. 19-1, Exhibit A, and is identified by respondent, SynchroPile, Inc., as "Exhibit 2."
[7]At this time, King understood Paiz to be representing only Kiewit Southern Co., although throughout their interaction, Paiz, as identified in his affidavit, was an engineer for Kiewit Louisiana Co., Massman Construction Co. and Traylor Bros., Inc., a joint venture. (Rec. Doc. No. 15-3).
[8]Rec Doc. No. 19-1, Exhibit 3, is attached to the affidavit of Philip King, Rec. Doc. No.  19-1, Exhibit A and was identified by respondent, SynchroPile, Inc., as "Exhibit 3."

"necessary information," company identification information, dates of use, etc., to draw up the aforementioned license agreement with SynchroPile, Inc. (Rec. Doc. No. 19-1, Exhibit 4).[9]  Neither Paiz nor any other representative of TKM provided the "necessary information" to King; however, King prepared a draft license agreement and forwarded it to Paiz.  (Rec. Doc. No. 19-1, Exhibit A).  No representative of TKM executed this draft license agreement.  (Rec. Doc. No. 19-1, Exhibit A.)

On April 24, 2008, TKM and State entered into the Construction Contract.[10]  At this time the aforementioned provision, specifically naming and providing the contact information to SynchroPile, was still included in the Construction Contract. (Rec. Doc. No. 19-1, Exhibit A); (Rec. Doc. No 15-4, Exhibit C at D-165).[11] There was no further discussion or execution of the pending licensing agreement between parties SynchroPile and TKM.  (Rec. Doc. No. 19-1, Exhibit A).

On October 14, 2008, Jeff Riley, TKM's Project director, sent a letter to Timothy Todd, Resident Project Engineer of Louisiana Timed Managers, the State's administrative supervising entity of the Construction Contract and the project itself.   (Rec. Doc. No.

---

[9]Rec Doc. No. 19-1, Exhibit 4, is manually attached to the affidavit of Philip King, Rec. Doc. No.  19-1, Exhibit A and was  identified by respondent, SynchroPile, Inc., as "Exhibit 4."
[10]The Construction Contract, is composed of Rec. Doc. No. 15-4, Exhibits A, B, and C.  This includes the generally named, Exhibit A – Construction Contract, Exhibit B – Standard Specifications, and Exhibit C – Special Provisions.
[11]Exhibit C, the Affidavit of Luis Paiz, was manually attached to Rec. Doc. No. 15-3.  The notice of Manual Attachment is Rec. Doc. No. 15-4, and has been identified by petitioner, TKM, as Exhibit C.

15-5, Exhibit D at 7).[12] Riley sought to summarize conversations between himself and Todd, reflecting a shift of the risk associated with using the State's prescribed "Wet Method of Construction," which specifically identified the SynchroPile post-grouting technique. (Rec. Doc. No. 15-5, Exhibit D at 7). Because TKM felt the risk of using this method unnecessary compared to TKM's preferred Rotator Method, Riley sought to have those risks and/or consequences shifted to the State. (Rec. Doc. No. 15-5, Exhibit D at 7). Specifically referring to the "Special Provisions" of the Construction Contract, Riley struck as follows:

> ~~This item shall govern for the pressure grouting of the drilled shaft bottom as shown and described in United States Patent No. US 6,371,698 or as directed by the Engineer. The constructor will contact and enter into a license agreement with SynchroPile, Inc., (P.O. Box 13238, San Antonio, TX 78213; Phone No. 210-355-6546; phil.king@synchropile.com).~~

Rec. Doc. No. 15-5, Exhibit D at 9.

On April 1, 2009, King spoke with Riley, TKM's Project Director, regarding the pending status of his previously tendered, draft licensing agreement. (Rec. Doc. No. 19-1, Exhibit A). Following this conversation, King understood that TKM had no intention to sign a licensing agreement with SynchroPile, Inc. (Rec. Doc. No. 19-1, Exhibit A). On April 3, 2009 King emailed Riley to confirm this understanding. (Rec. Doc. No. 19-1, Exhibit

---

[12]Rec. Doc. No. 15-5 has been identified by petitioner, as Exhibit D. It includes the exchange between Jeff Riley and Louisiana Timed Managers regarding what has become Change Order No. 013, which removed the specific inclusion of SynchroPile from the Special Provisions of the Construction Contract.

5).[13] On April 15, 2009 SynchroPile's counsel, Kirt O'Neill sent a letter to Riley demanding TKM comply with SynchroPile's interpretation of the Construction Contract, specifically the Special Provisions, naming SynchroPile, Inc. (Rec. Doc. No. 19-2, Exhibit 1).[14] To date, no licensing agreement has been executed between the parties. (Rec. Doc. No. 19-1, Exhibit A).

On August 6, 2009, Belinda Bondy, Office Engineer Manager of Louisiana Timed Managers, responding to Riley's earlier enquiry, included a copy of "executed Change Order No. 013", which removed the previously prescribed requirement for the contractor, TKM, to use "Wet Method of Construction" and allowed for the Rotator Method of Drilled Shaft Construction. (Rec. Doc. No. 15-5, Exhibit D at 1). In doing so, any mention of the licensing agreement between contractor and SynchroPile was removed from the Special Provisions of the Construction Contract. (Rec. Doc. No. 15-5, Exhibit D at 1). Item No. S-118, naming SynchroPile was eliminated from the Construction Contract. (Rec. Doc. No. 15-5, Exhibit D at 1).

## II. *Parties' Contentions*

Petitioners, TKM, seek dismissal of SynchroPile's Amended Complaint for failure to state a cause of action. (Rec. Doc. No. 15). TKM contends that, under Louisiana law, plaintiff, SynchroPile, is neither a party to nor a third-party beneficiary of

---

[13] Rec Doc. No. 19-1, Exhibit 5, is attached to the affidavit of Philip King, Rec. Doc. No. 19-1, Exhibit A, and is identified by SynchroPile, Inc., as "Exhibit 5".
[14] Rec Doc. No. 19-2, Exhibit 1, is attached to Rec. Doc. No. 19-2 and is identified by SynchroPile, Inc. as "Exhibit 1".

the Construction Contract between TKM and the State. (Rec. Doc. No. 15-1 at 6). As such, movant further contends SynchroPile does not have standing to bring a suit to enforce any provision of the Construction Contract. (Rec. Doc. No. 15-1 at 6). Specifically TKM asserts that SynchroPile is unable to establish status as a third party beneficiary because the Construction Contract expressly excludes third party beneficiaries in Section 107.24 of the "Standard Specifications" of the Construction Contract:

> **107.24 THIRD PARTY LIABILITY.** It is agreed between the parties executing the contract that it is not intended by any provisions of the contract to create the public nor any member thereof a third party beneficiary hereunder, nor to authorize anyone not a party to this contract to maintain a suit for personal injuries or property damage pursuant to the contract.

(Rec. Doc. No. 15-4, Exhibit B at 66). Second, TKM contends there is no certain benefit SynchroPile would attain as a result of the Construction Contract. Furthermore, any declared benefit to SynchroPile was only incidental and thus insufficient to establish third party beneficiary status sufficient to confer the legal standing necessary to maintain the instant action. (Rec. Doc. No. 15-1 at 7).[15]

SynchroPile contends that it has standing as Louisiana law affords them third beneficiary status. (Rec. Doc. No. 19 at 5). Specifically, SynchroPile cites the stipulation of the "Special

---

[15] Exhibit B is manually attached to Rec. Doc. No. 15-3, the Affidavit of Luis Paiz. The Notice of Manual Attachment is found at Rec. Doc. No. 15-4 and identified by petitioner, TKM, as Exhibit B.

Provisions" in the Construction Contract under Item No. S-118 which states the contractor's obligation to enter a license agreement with SynchroPile and provides the necessary contact information. (Rec. Doc. No. 19 at 7). Furthermore, SynchroPile interprets Section 107.24 as irrelevant to this determination, as it contends that, SynchroPile having been directly named in the contract, is therefore not included in Section 107.24's exclusion of the "public or any member thereof". (Rec. Doc. No. 19 at 13).

### III. *Law and Analysis*

A. <u>Summary Judgment Standard of Review</u>

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits,

depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). A court must be convinced "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in [his or] her favor." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167. 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

  B. <u>Third Party Beneficiary Status</u>

  In order "to successfully maintain an action under a contract to which [one] is not a party the contract must clearly express the contracting parties' intent to stipulate some advantage for that (third) [party]." *Arrow Trucking Co. v. Continental Ins. Co.*, 465 So.2d 691, 698 (La. 1985). Under Louisiana law, a contract for the benefit of a third party is commonly referred to as a "stipulation pour autrui". La. Code Ann. Art. 1978 (2010) (cited in *Joseph v. Hospital Service District No. 2 of Parish of St. Mary*, 939 So.2d 1206, 1212 (La. 2006). In order for such a stipulation to be created (1) the stipulation for the benefit of the third party must be manifestly clear, (2) there must be certainty as to the benefit provided to the third party, and (3) the benefit must not be a mere incident of the contract between the parties. *Id.*

The element most relevant to the instant motion is the requisite manifest clarity of a stipulation for benefit of the third party. "The most basic requirement of a 'stipulation pour autrui' is that the contract manifests a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof." La. Code Ann. 1978.

Under Louisiana law, the meaning and intent of the parties to a written instrument should be determined within the four corners of the document. *Shoreline Gas, Inc. v. Grace Resources, Inc.*, (La.App.2d Cir.04/04/01), 786 So.2d 137. Furthermore, interpretation of an unambiguous contract is a matter of law. *Corbello v. Iowa Production*, 2002-0826 (La. 02/25/2003), 850 So.2d 686, 708. When that interpretation is based upon clear, explicit language such that it would not lead to absurd consequences, no further interpretation should be made in determining the parties' intent. *Id*.

A determination of the intent of the parties based upon the clear and explicit language of the Construction Contract is hereby necessary. Both TKM and SynchroPile cite distinct portions of the Construction Contract as evidence of the intent of the parties within the four corners of the document which support their respective arguments.

Plaintiff believes that Item Number S-118 under the "Special Provision" of the Construction Contract indicates the intent of the parties to establish SynchroPile as a third-party beneficiary. (Rec. Doc. No 15-4, Exhibit C at D-165). This language is clear and unambiguous on its face and clearly indicates an intention that the contractor establish a license agreement to use SynchroPile's patented post grouting technique. *Id*. However, the clear and unambiguous language of this portion of the Construction Contract is contradictory to Section 107.24, a similarly clear and unambiguous provision cited by Defendants, TKM. (Rec. Doc. No. 15-4, Exhibit B at 66). The section clearly expresses the lack of any intention of the parties to create any beneficiary to the contract who is not an immediate party.

The directly contradictory, yet unambiguous language of these two provisions requires deference to the well settled Louisiana convention which defers to the more specific provision, when a general contract term conflicts with the specific. *Barkley Estate Community Ass'n, Inc. v. Huskey*, 30 So.3d 992, 998 (La.App. 5 Cir., 2010). In *Barkley*, the court considered two similarly contradictory provisions, in that case, one requiring arbitration as a means for dispute resolution, the other excluding arbitration and advising alternative means. *Id*. at 97. Reviewing the contract's language and, similar to the instant case, finding both terms similarly

clear and unambiguous, the court deferred to the more specific of the provisions.

In making this determination, the respective contract provisions must be assessed, one which specifically names the third party and another which specifically restricts the contract's creation of third party beneficiaries.

Persuasive authority beyond the United States Court of Appeals for the Fifth Circuit is replete with examples in which the limitation of third party liability clause governs. The Supreme Court of Virginia, in *Richmond Shopping Center, Inc. v. Wiley N. Jackson Co.*, 220 Va. 135, 142 (Va. 1979), addressed a practically identical third party liability clause as is contained in Section 107.24. The court found that despite the conflict in the contract's terms, a provision which specifically addresses the creation of third parties should govern. *Id*. "[T]o look to other sections of the contract in order to determine the applicability of the third party beneficiary doctrine would disregard the very part of the contract which deals specifically in unambiguous terms with that subject and with the intention of the contracting parties." *Id*. at 143. The Supreme Court of Iowa found similarly in *RPC Liquidation v. Iowa Dept. of Transp.*, 717 N.W.2d 317, 321-322 (Iowa 2006), when considering a similar third party liability provision.[16]

---

[16]The provision for the court's consideration in *RPC Liquidation v. Iowa Dept. of Transp.* Reads: "[ ] it is specifically agreed between the parties executing this contract that it is not intended by any of the provisions of any part of the contract documents to create in the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to this contract to

Specifically, the court noted the inclusion of the phrase "public or any member thereof", determining that such language was broad enough to exclude all potential third-party beneficiaries to the contract. *Id*.

Section 107.24 indicates the clear intention of the parties and controls whether SynchroPile is a third party beneficiary. It is clear that this provision of the contract controls and as the provision is unambiguous and clear, it states plainly that the Construction Contract is not to include third-party beneficiaries.

New Orleans, Louisiana, this 3RD day of August, 2011.

_____
UNITED STATES DISTRICT JUDGE

---

maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this contract."  *RPC Liquidation v. Iowa Dept. of Transp.*, 717 N.W.2d 317, 321-322 (Iowa 2006).